The next case is United States v. Crispin Torres is submitted on the briefs and our next witness is Kent Young Good morning. Kent Young on behalf of Ms. Montoya. I'd like to reserve one minute for rebuttal. I think the interesting thing about Ms. Montoya's case is that if you look at both the first and second issues presented, they actually sort of dovetail with each other. In this court's 2006 opinion in Vasquez Ramirez, this court noted that a defendant has a right to enter an unconditional guilty plea so long as the requirements of Rule 11b are met, one of which is voluntariness. In this case, what happened with sentencing, the district court said that it was rejecting the plea agreement, but did not provide Ms. Montoya any opportunity to withdraw her plea as required by Rule 11c5b. We would submit that, of course, this is error. So I would submit that both of these issues actually correspond with each other. In this case, you have a scenario where either the district court complied with Rule 11b or, alternatively, it was not voluntary, in which case that would impact whether or not the district court had the authority to actually reject the plea agreement at sentencing. Based on your brief, it sounded like your argument was that because the district court used the word reject when it rejected the proposed agreement under C1b into a plea agreement under C1c. Do you have any authority that would support that theory? I think Vasquez Ramirez actually addresses that specifically because in Vasquez Ramirez, this is the 2006 case, and it's cited in the brief, so I believe it's footnote four of the opening brief, and the citation is 443 F3rd 692. In that instance, this court actually said specifically, I'm looking here for the exact site here, but I believe it's cited in the opening brief footnote four, so citation to Vasquez Ramirez, and it notes that, oh, I'm looking here, this would be Vasquez Ramirez 443 F3rd 692, and the pinpoint site would be at 700. Although we can find no case dealing with precisely the same issue we confront here, where a judge rejects a plea that meets the Rule 11b requirements, the D.C. Circuit has come the closest. It found that a district court abused its discretion by rejecting a guilty plea without regard to whether the Rule 11b requirements had been met, suggesting that a plea rejection must relate to Rule 11b's requirements. But does it say that transforms it into a Rule 11c plea? It does not, but there's actually a point here where the district court actually states, not the district court, excuse me, this is at 696, the pinpoint site is 696, thus viewing Rules 11a and b together, it is clear that a court must accept an unconditional guilty plea so long as the Rule 11b requirements are met. The existence or nonexistence of a Rule 11c plea agreement is irrelevant to the separate issue of how a defendant chooses to plea. So the case I'm relying on is Vasquez Ramirez, and of course Ellis, the en banc case, also lays out all the procedures for the district court to comply with. And here you have a scenario where it's almost circular, so to speak. I mean, she has a right to enter an unconditional guilty plea. She's stipulating Ms. Montoya to the drug calculations in the plea agreement. And as a consequence— So he didn't reject—so the district court didn't reject the plea here. The district court said, I don't agree with your recommendation, your sentencing recommendation, and imposed a different sentence. So the plea was accepted, but the recommendation was not binding on the district court, which is a function of a 11c1b plea. So are you arguing that the district court was bound to accept the sentencing recommendation? And if so, why? Well, the argument is that the district court was required to give advance notice, that it was going to reject the—it's actually stated words to the effect of sentencing. I reject the plea agreement, and so—and refers to the appellate waiver and tells her that she has a right to— So now you're saying there was a notice issue? Because I don't remember that in the briefing. I believe I cited Rule 32h specifically, that the district court was required to give it before the sentencing, before it rejected the plea agreement, because it pertained to the guidelines calculations, the plea agreement. Why doesn't the defendant already have notice when they enter into that kind of a plea, that the sentencing is on the table? Nothing is set in stone. The sentencing is on the table, you mean? The type of plea that your client entered into is one where the district court has the So how does your client not have notice when they're even entering that kind of an agreement, that things could happen when you're in—things could change in front of the district judge? That's true, things can change, but she actually stipulated the drug quantity, so even though there's an advisory guideline calculation—the guidelines, of course, are advisory, following Booker, who's been on the books for quite a while—the guideline calculations are advisory, but she still stipulated to the drug quantity, so as a practical matter, once she entered into that stipulation of the drug quantity, she couldn't really get out of it, and it would impact her advisory guidelines calculations. Aren't we reading way too much into his use of the word reject, district court's use of the word reject? I mean, I think, looking at your phone number here, you practice in San Diego, and this district court judge is known for being tough, and he's skeptical of plea agreements, even if he accepts it, and, you know, all that was intended to say, you know, I'm not—I think—I don't agree with this deal, but I'll accept it, and—but in terms of sentencing, you know, I'm not going to agree with the recommendation. I mean, that seems pretty obvious. If you've been before this judge, that's what he was trying to say. He was, but he also referred to the appellate waiver specifically and told her that, under his interpretation of the agreement, that she now had a right to appeal. Isn't that correct? Because the appeal waiver said, but if the sentence is more than 71 months, then you can appeal. I mean, that seems right. That is true. That is true, and let me—I just want to refer to the district court's exact words here. It's—this is—would be at excerpts of Record 67, I decline to accept the plea agreement. I reject the plea agreement. So, for whatever reasons the defendant may have to appeal, they're broadened to include all of those that are implicated by the court's rejection of the plea agreement in this case. So, he's using the word reject numerous times, and he's referring to the appellate waiver. So, I understand the argument that, you know, there's a case where he's rejecting the government sentencing recommendation. That is certainly true, but he's also telling the defendant that she—that he's rejecting the plea agreement, and in that circumstance, she would have a right to withdraw. I would like to— Conditions, the argument that you've raised, and the argument being that the district court erred in imposing standard conditions without mentioning that at the oral sentencing hearing. Why doesn't our decision in Napier foreclosure argument? I believe Napier is—and I hope I'm pronouncing it correctly—is dictum, and because in that case, they're actually—the court is actually addressing not a standard condition of supervised release, but there's special conditions at issue there. And so, there's general dictum in Napier about the better practice. The better practice is to remand—not to remand, excuse me—the better practice is to pronounce standard conditions, but there's not actual holding in that case. It's dictum. So, I would submit that this isn't a case where we have to deal with Miller v. Gammie and asking for Napier to be overruled. But of course, in our circuit, we have a rule that dicta can be binding—or dicta is binding. I mean, I would—I believe it's the holding that the court would look to, not the dictum. But I mean, I understand. I understand Your Honor's concern. Of course, it also—there also is a conflict with out-of-circuit cases as well, the Fourth Circuit, Fifth Circuit, Seventh Circuit. I believe the Fifth Circuit, Diggles, the case I've cited in the opening brief, I think, has the best approach to the en banc case from 2020. But isn't the holding in Napier that, in that case, the court made an oral—a statement that the terms and conditions of supervised release will be in the final judgment? And we said that that was ambiguous, not a conflict, but ambiguous, and so we had to vacate the sentence. So, it doesn't say anything really about standard or non-standard conditions. It just says that the statement was ambiguous. That's exactly right. That's exactly right. And that's— So, everything else in the opinion is mere dicta, right? Well, most—the part that I think may potentially address this issue, I would argue, is dictum, where the court is giving sort of advice. Of course, we're doing—it's a 2006 case, and it's right after Booker comes down. And, of course, a lot has happened since 2006, and now, of course, there is a conflict to— Well, I took you over your time, so we'll give you a minute for rebuttal. Okay, thank you. I appreciate it. We'll hear from the government. May it please the Court, Benjamin Hawley for the United States. Picking up on that last point, several panels of this Court, albeit in unpublished decisions, have treated Napier as binding on exactly this issue. Other circuits have as well, as counsel mentioned. The Fourth Circuit, for example, in surveying kind of a circuit split, has said, citing Napier, the Ninth Circuit says that standard conditions are implicit. So, to the extent—the government's position is it's not dicta, but regardless, it's not plain error because this Court, other courts have all found it to be—that this Court has held standard conditions are implicit, exactly what Napier says. Well, one of our unpublished decisions from 2020 says that Napier applies when the district judge says on the record that conditions are going to be imposed in the written judgment, right? And so, on this record, we don't even have that. We don't have this district judge saying that there's going to be conditions. I'm not going through all of them. Correct. So, in terms of the unpublished decisions, first, they essentially go both ways. There are some that do exactly—as you said, there are some that just, with this argument, cite Napier, and that's kind of the end of the analysis, as it were. So, it's true that here, the district court did not go into the standard or mandatory conditions. However, they were and, as well, during the Rule 11 colloquy with the magistrate judge, the magistrate judge went in detail, not as to what the conditions were, but there would be conditions of supervised release. If you violate them, you can be put into custody again. All of that will be up to the district court. Neither of those things are the moment of sentencing, right? That's correct. So, why would we consider those things in terms of whether your right to be present at your sentencing was satisfied? Because, in terms of the PSR, that's obviously prepared specifically for sentencing. The Court, the parties all talk about the PSR, are using it as kind of a foundational document for what then is discussed. But is there any authority out there that says that if a district judge forgets to mention something at the hearing and then puts it in the judgment, it's fine that it was missed because it was in the PSR? There are, in terms of—if the argument is, for example, a procedural error, the district court did not fully explain it, then, for example, in Trujillo, this Court has said, we can look to the record as a whole if the Court's explanation was sufficient on the record as a whole. That is not directly on point as to standard and mandatory conditions. But again, for that, I would point to Napier and its statement that the better practice would be to say it, but that necessarily means, as Napier held, it is not the required practice. The required rule is that mandatory and standard are implicit. Any additional conditions, special conditions, do need to be stated specifically, as the district court did here for some. Has every circuit said that mandatory conditions are implicit? I believe so, but I don't—I'm not 100 percent on that, but I believe that's the case by the nature of them being mandatory. So those, because they're mandatory, those don't have to be stated in sentencing, is that— That's my understanding, yes. And then there is— So even if they're not stated in sentencing, they're deemed to be included in the sentence? That's my understanding. My understanding, which could be wrong because I haven't done a full circuit survey of this, is the split, to the extent there is one, is about the standard conditions and whether those are implicit or— And some circuits say they are implicit and some say they're not, is that correct? Correct. I believe it's the Second and the Ninth Circuit, again, assuming you go with Napier, are on one side, and the Fourth and Seventh, and maybe the Fifth, as I recall, would be on the other side. There's at least one cert petition pending before the Supreme Court raising exactly this issue. You mentioned that we should review this under plain error, but, you know, the issue here is that the district court didn't announce orally that the court would impose standard conditions, and then it just later came in the written judgment. So why would we review plain error? When would Ms. Montoya have an opportunity to raise this? So that argument relies on the idea that it was mentioned, again, at the magistrate hearing, or Rule 11 hearing, and during, in the PSR. So it wasn't a surprise that there were conditions. If the court rejects that, then we agree we would be on de novo review at that point. Again, we would still rely on Napier, even on de novo review. Turning to the withdrawal of the plea issue, the, this court's reject, or the court saying it rejected the plea agreement came in the context of talking about the appellate waiver and where that was. The parties had agreed that if the sentence was 71 months or below, then Ms. Montoya could not appeal, other than an effective assistance of counsel. If it was above 71 months, then she could appeal the sentence. The district court confirmed that with the prosecutor. As soon as the prosecutor said, that's correct, 71 months is the appellate waiver, that's when the court said, well, I do not accept the agreement, I reject the agreement, so she can appeal on broader grounds. That's exactly what the parties had agreed to. So the district court was not rejecting the plea agreement as a whole, and it would be reading too much into statements at an oral hearing to give it the precision meaning, rejection has to have this one particular meaning that is not allowed, as opposed to I'm rejecting your sentencing recommendations or the sentencing as a whole. Moreover, the district court, even if it thought it could do that, can't. A B1C plea and an A can both be rejected, and there are procedures that follow from that in the cases that counsel cited, but a C1B plea can't. So the district court can't do it, and there's no reason to believe here that it was doing it when there's two reasonable readings of the district court's comments, one that's not allowed at all and one that very much is and is contemplated by the agreement. I think it makes much more sense to take that latter reading. Unless the court has any further questions, I'd be happy to submit. Apparently not, thank you. Thank you. We'll give you a minute for rebuttal. Thank you. Just briefly on the standard of review on issue four, I would submit that it's reviewed for harmless error, and there's cases I've relied on in the briefing. Gunning is one of them, also United States versus MAC. But the cases I've cited in the briefing note that the denial of the right to allocate is basically reviewed for harmlessness, so it's not something that's subject to the plain error standard of review. If the court has no further questions, I will submit. Okay. Well, we thank both sides for their argument. The case of United States versus Montoya is submitted, and the case of George Dragan and Kirill Dragan versus Valadolid is submitted. And that concludes our cases for this morning. We're adjourned for this session. All rise.
judges: IKUTA, LEE, FORREST